611 A.2d 662

E.I.B., AN INFANT BY HER GUARDIAN AD LITEM,
I.J., PLAINTIFF-RESPONDENT, v. J.R.B.,
DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 9, 1992—Decided August 5, 1992.

Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.

*Strauss & Tauriello,* attorneys for appellant (*Joe E. Strauss,* on the brief).

*Kuchinsky and Rotunno,* attorneys for respondent (*Robert I. Kuchinsky,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether an unsuccessful paternity action brought by a mother on her child's behalf bars a subsequent action brought in the name of the child herself.

L.J. gave birth to E.I.B. on December 15, 1975. Shortly thereafter, L.J. filed a complaint pursuant to *N.J.S.A.* 9:16–2 and 3, alleging that J.R.B. is E.I.B.'s father and seeking child support. The case was ultimately tried before a jury, which returned a verdict in J.R.B.'s favor finding that he is not E.I.B.'s father. L.J. appealed to this court, which affirmed. *L.J. v. J.B.,* 150 *N.J.Super.* 373, 375 *A.*2d 1202 (App.Div.1977). The Supreme Court denied L.J.'s petition for certification. 75 *N.J.* 24, 379 *A.*2d 255 (1977).

On June 12, 1991, this suit was brought on E.I.B.'s behalf pursuant to the New Jersey Parentage Act, *N.J.S.A.* 9:17–38 to –59, by her grandmother, I.J., again alleging that J.R.B. is her father and seeking both retroactive and prospective support. J.R.B. moved to dismiss on the ground that the present action is barred by the jury verdict in the prior action under principles of *res judicata.* In an oral opinion, the trial court denied the motion on the grounds that the Parentage Act created a different cause of action than *N.J.S.A.* 9:16–2 and 3, and that E.I.B. and her mother were not "in privity for the purposes of res judicata on the prior action." The court also appointed a non-family member as guardian *ad litem* for E.I.B.

We granted J.R.B.'s motion for leave to appeal from the order denying his motion to dismiss and now reverse.

"The application of *res judicata* doctrine requires substantially similar or identical causes of action and issues, parties, and relief sought." *Culver v. Insurance Co. of N. Amer.,* 115

*N.J.* 451, 460, 559 *A.*2d 400 (1989). E.I.B. argues that the Legislature created "a new cause of action in favor of the child" when it enacted the Parentage Act, and consequently that the judgment against L.J. on her claim under *N.J.S.A.* 9:16–2 and 3 is not *res judicata* with respect to E.I.B.'s claim. We find it unnecessary to decide whether the cause of action established under the Parentage Act is substantially similar to the cause of action formerly provided under *N.J.S.A.* 9:16–2 and 3, because we conclude that E.I.B.'s complaint would be barred under the doctrine of collateral estoppel in any event.

"The doctrine of collateral estoppel is a branch of the broader law of *res judicata* that bars relitigation of any issue actually determined in a prior action between the same parties and their privies involving a different claim or cause of action." *Allesandra v. Gross,* 187 *N.J.Super.* 96, 103, 453 *A.*2d 904 (App.Div. 1982). For the doctrine to apply, it must be shown that "(1) the issue decided in the prior adjudication was identical with the one presented in the subsequent action, (2) the prior action was a judgment on the merits, and (3) the party against whom it was asserted had been a party or in privity with a party to the earlier adjudication." *State v. Gonzalez,* 75 *N.J.* 181, 189, 380 *A.*2d 1128 (1977). In addition, "the factual issue must actually have been litigated and determined" and the resolution of that factual issue must have been "necessary to support the judgment rendered in the prior action." *Allesandra v. Gross, supra,* 187 *N.J.Super.* at 105, 453 *A.*2d 904.

It is undisputed the issue of paternity decided in J.R.B.'s favor in 1976 is identical to the issue now raised by E.I.B., that that issue was actually litigated and determined in J.R.B.'s favor in the earlier action and that the resolution of that issue was essential to the judgment. It also is undisputed that E.I.B. was not a named party in the earlier action. Therefore, the application of the doctrine of collateral estoppel to bar the present action turns on whether E.I.B. was "in privity" with L.J. in the earlier action.

Privity generally involves a party to earlier litigation so identified in interest with a party to later litigation that they represent the same legal right. One circumstance in which there is privity is where one party is designated by statute to act as another party's representative. *Restatement (Second) of Judgments* § 41(1)(d) (1980); *see E.E.O.C. v. United States Steel Corp.*, 921 *F.*2d 489, 493–94 (3d Cir.1990); *see also Moore v. Hafeeza*, 212 *N.J.Super.* 399, 403–05, 515 *A.*2d 271 (Ch.Div. 1986). Therefore, the determination whether E.I.B. was in privity with L.J. requires an analysis of the nature of the action brought by L.J. and the interests she represented therein.

The prior action against J.R.B. was brought pursuant to *N.J.S.A.* 9:16–2, which provided that "[a] child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock," and *N.J.S.A.* 9:16–3, which provided in relevant part that "[p]roceedings to enforce the obligations imposed by section 9:16–2 of this Title may be maintained by one parent against the other, or by the person having physical custody of the child." Thus, an action under *N.J.S.A.* 9:16–3 was a representative action brought by a parent or guardian on the child's behalf. *B. v. O.*, 50 *N.J.* 93, 97, 232 *A.*2d 401 (1967). Moreover, a child could not bring a proceeding under *N.J.S.A.* 9:16–3 on its own behalf.[1] *Kopak v. Polzer*, 5 *N.J.Super.* 114, 117, 68 *A.*2d 484 (App.Div.1949), *aff'd*, 4 *N.J.* 327, 72 *A.*2d 869 (1950).

---

[1]Several out-of-state cases have held that a child may bring a paternity action on its own behalf notwithstanding the absence of enabling legislation authorizing such an action. *See, e.g., Spada v. Pauley*, 149 *Mich.App.* 196, 385 *N.W.*2d 746, *certif. denied*, 425 *Mich.* 1203, 389 *N.W.*2d 85 (1986); *State v. Douty*, 92 *Wash.*2d 930, 603 *P.*2d 373, 375 (1979); *In re R.W.L.*, 116 *Wis.*2d 150, 341 *N.W.*2d 682 (1984). However, no New Jersey case ever reached this conclusion, and the common understanding prior to the enactment of the Paternity Act was that a child could not either initiate or be joined in a paternity action.

*N.J.S.A.* 9:16–2 and 3 were repealed when the Legislature enacted the Parentage Act in 1983. *L.* 1983, *c.* 17, § 23. This legislation provides that a child may bring a paternity action, *N.J.S.A.* 9:17–45a, or be made party to a paternity action brought by another, *N.J.S.A.* 9:17–47. It further provides that if the child is a minor, a person other than the child's mother or father shall be appointed as *guardian ad litem* for the child. *Ibid.*

We are satisfied that the prior paternity action brought by L.J. on E.I.B.'s behalf under *N.J.S.A.* 9:16–2 and 3 was the functional equivalent of and involved the same legal right as the present paternity action brought by her grandmother on her behalf pursuant to *N.J.S.A.* 9:17–45. The issue in the two actions is identical: is J.R.B. the father? The relief sought also is the same: an adjudication of paternity and the entry of a support order against J.R.B. And both actions were brought on behalf of the same party, E.I.B. Moreover, any collateral benefits which might accrue to E.I.B. from a declaration of J.R.B.'s paternity, such as the right to inherit in the event of intestacy or knowledge of family medical history, would be the same, regardless of whether that declaration were obtained as a result of the mother's action brought under *N.J.S.A.* 9:16–2 and 3 or the grandmother's action brought under *N.J.S.A.* 9:17–45.

We recognize that the Parentage Act reflects a legislative determination that a minor child should be made a party to a paternity action and be represented by a person other than its mother in order to be bound by the judgment. However, the Act does not suggest that every paternity action litigated on a child's behalf by its mother pursuant to *N.J.S.A.* 9:16–3 may now be relitigated simply by filing a new complaint in the name of the child.[2]

---

See 11 *New Jersey Practice, Marriage, Divorce & Separation* § 1337, at 609 n. 25 (Paul N. Silverman) (4th ed. 1981).

[2] The parties have not addressed whether, or under what circumstances, a child may obtain relief under *R.* 4:50–1 from a judgment of non-paternity

We reject the trial court's view that the mother's representation of E.I.B. was inadequate because her motivation in bringing the first paternity action was primarily economic while the child's motivation encompasses a host of non-economic interests, including knowledge of family medical history and the basic human need to know one's heritage. As the court noted in *Bradley v. Division of Child Support Enforcement ex. rel. Patterson*, 582 A.2d 478, 482 (Del.1990), "[i]rrespective of the distinctions between the totality of rights in which a child may be interested, as opposed to the rights that are sought to be enforced by a mother or a public official, the fact remains that the putative father's paternity of the child is the issue being litigated in an action initiated by any one of them." Similarly, in *Guziejka v. Desgranges*, 571 A.2d 32, 34 (R.I.1990), the court concluded that "these abstract or even substantive distinctions" between the totality of rights sought by mother and child in the two actions do not justify "the bringing of repetitious litigation of the issue of paternity that is central to all these actions."

The representation which L.J. provided E.I.B. in the prior paternity action is fundamentally different from the circumstances in *N.M. v. J.G.*, 255 *N.J.Super.* 423, 605 *A.*2d 709 (App.Div.1992), in which we found no privity between a mother who successfully alleged in an uncontested divorce action that her child was fathered by her husband and the child who alleged in a later action that his father was actually one of his mother's paramours. We noted that "[i]n order for the doctrine of privity to be invoked, the first litigation must provide substantial protection of the rights and interests of the party sought to be bound by the second." *Id.* at 429, 605 *A.*2d 709. However, the mother's divorce action made a different claim—that the husband was the child's father—and sought different relief—the payment of child support by the husband—than the

entered in an action brought under the now repealed *N.J.S.A.* 9:16–2 and 3, and our opinion should not be read to express any view on that question. See *Moore v. Hafeeza, supra,* 212 *N.J.Super.* at 406–08, 515 *A.*2d 271.

child's paternity action against the paramour. Moreover, the divorce action was not brought on behalf of the child and was not actually litigated. Under these circumstances, the child could not reasonably be found to have been so identified in interest with his mother in her divorce action that he was in privity and therefore bound by the results of that litigation.

In contrast, the paternity action brought by L.J. made the same paternity allegation and sought essentially the same relief as the present action and was fully litigated through the New Jersey court system. Consequently, unlike in *N.M. v. J.G.*, there is no basis for concluding that the prior paternity action failed to provide substantial protection of the rights and interests of E.I.B.

Our conclusion that E.I.B. is bound by the results of the prior paternity action brought by her mother on her behalf is supported by the decisions in most other jurisdictions in which the same or a similar issue has been presented. *See, e.g., Department of Human Servs. ex rel. Davis v. Seamster*, 36 *Ark.App.* 202, 820 *S.W.*2d 298 (1991); *Bradley v. Division of Child Support Enforcement ex. rel. Patterson, supra; T.R. v. Pearson ex. rel. A.W.*, 470 *N.E.*2d 95 (Ind.Ct.App.1984); *O'Bannon ex rel. O'Bannon v. Azar*, 506 *So.*2d 522 (La.Ct.App.1987), *cert. denied*, 511 *So.*2d 1158 (La.1987); *Guziejka v. Desgranges, supra; see also* E. LeFevre, Annotation, *Judgment In Bastardy Proceeding As Conclusive Of Issues In Subsequent Bastardy Proceeding*, 37 *A.L.R.*2d 836, 839 (1954). For example, in *T.R. v. Pearson ex rel. A.W., supra*, the court held that a mother's unsuccessful paternity action as the child's representative under the then governing statute barred a later paternity action in the name of the child under subsequently enacted legislation:

> The record clearly indicates that [the mother] G.L.W. fully represented [the child] A.W.'s rights in the 1977 suit.... The suit dealt exclusively with the question of paternity and the concomitant obligation of support in the event paternity was established.... The issues now forwarded are identical to those forwarded in the 1977 suit, and liability in both cases is based on the same

facts. The issues were fully and conclusively litigated in the first action and may not be relitigated.

Not only were the elements of issue preclusion present, but the policies favoring preclusion clearly outweigh the reasons for retrying this matter. First, courts favor the final repose of decisions. The purpose of our court system is to resolve disputes. If different parties representing the same interest are allowed to successively relitigate the same facts and issues, final judgment would become an illusive, if not unattainable goal.

Second, courts should promote policies which discourage inconsistent judgments. While relitigation of this case is not certain to produce contrary results, the possibility is not inconceivable.

Third, the need to avoid harassing litigation is a legitimate concern, worthy of consideration in barring subsequent suits. In 1977, T.R. successfully defended the suit brought by A.W.'s mother, G.L.W., which was based on the same facts and legal issues now forwarded. T.R. now faces the same ordeal, embarrassment, and expense incurred in the 1977 suit.... It seems fundamentally unfair to make him run the same gambit a second time.

Finally, the failure to invoke preclusion in this case results in an unnecessary delay and additional burden on an already overcrowded court system....

From the child's perspective, the imposition of preclusion will not dilute any rights not already forwarded by her mother in the first suit. The present statute, by joining the mother, child, and putative father as necessary parties to paternity actions avoids the problem now considered. It does not, however, extend to the parties or their privies a new cause of action where their cases have been fully litigated under the prior statute. [470 *N.E.*2d at 97.]

With only a few exceptions, the cases which have held that a child was not in privity with a parent have involved prior paternity actions which were not actually litigated. *See, e.g., Department of Health and Rehabilitative Servs. ex rel. Ward v. Wyatt,* 475 *So.*2d 1332 (Fla.Dist.Ct.App.1985) (earlier action dismissed with prejudice by stipulation); *Maller ex rel. v. Cohen,* 176 *Ill.App.*3d 987, 126 *Ill.Dec.* 402, 531 *N.E.*2d 1029 (1988) (prior suit dismissed for failure to adhere to an unconstitutional statute of limitations), *appeal denied,* 125 *Ill.*2d 567, 130 *Ill.Dec.* 482, 537 *N.E.*2d 811 (1989); *Arsenault v. Carrier,* 390 *A.*2d 1048 (Me.1978) (prior action settled); *Johnson v. Hunter,* 447 *N.W.*2d 871 (Minn.1989) (prior suit orally dismissed with prejudice when mother failed to appear); *Johnson v. Norman,* 66 *Ohio St.*2d 186, 421 *N.E.*2d 124 (1981) (earlier action dismissed with prejudice at request of mother); *State ex rel. Div. of Human Servs. v. Benjamin P.B.,* 183 *W.Va.* 220,

395 *S.E.*2d 220 (1990) (prior action dismissed at mother's request); *J.L.S. ex rel. P.N.B. v. J.L.D.,* 531 *N.E.*2d 1203 (Ind.Ct. App.1988) (prior action dismissed with prejudice by agreement of parties). Indeed, several of these decisions expressly indicate that if the paternity action brought by the parent had been actually litigated, the child's subsequent action would have been barred. For example, the court in *J.L.S. ex rel. P.N.B. v. J.L.D., supra,* distinguished the previously quoted decision in *T.R. v. Pearson ex rel. A.W., supra,* on the ground that the prior paternity action in that case had been actually litigated:

In *T.R.* the case was tried on the merits and a jury found the defendant was not the father....

In the instant case there was no trial on the merits and no judgment that the defendant was not the father. Instead, the parties dismissed the action with prejudice by an agreed entry.

Absent a full and fair hearing on the merits, the justification for the result in *T.R.* must give way to the equal protection rights of illegitimate children recognized in *Mills v. Habluetzel* (1982), 456 *U.S.* 91, 102 *S.Ct.* 1549, 71 *L.Ed.*2d 770. [531 *N.E.*2d at 1203.]

Similarly, in *Maller ex rel. Maller v. Cohen, supra,* the court noted:

[W]e do not have here a judgment against the mother based on a jury verdict, but a judgment based on the mother's failure to file her complaint on time. The issue here is whether, in that filing, she was in privity with [her daughter]. [531 *N.E.*2d at 1031.]

And in *Johnson v. Hunter, supra,* the court concluded that "[u]nless a child's specific interests are addressed on the merits, a separate cause of action will be available to such child in another proper action." 447 *N.W.*2d at 877.

Other cases which have found a lack of privity between a parent and child have involved situations where the parent failed to join the child as a party, as permitted by that state's statutes, and thus the child in the earlier action did not receive the independent representation contemplated by that state's laws. Thus, in *Commonwealth, Dep't of Social Servs. ex rel. Gray v. Johnson,* 7 *Va.App.* 614, 376 *S.E.*2d 787 (1989), the mother failed to join her child as a party, as permitted by Virginia law, and consequently the court did not appoint a

guardian *ad litem* to represent the child's separate interests. In addition, the mother pursued the action without the assistance of counsel. Under these circumstances, the court held that the mother's unsuccessful paternity action, although actually litigated, did not bar a subsequent action by the child. Similarly, in *Ruddock v. Ohls*, 91 *Cal.App.*3d 271, 154 *Cal. Rptr.* 87 (1979), the court held that a child was not bound by a finding of non-paternity in a matrimonial action, relying in part on the failure to join the child as a party. *Id.* 154 *Cal.Rptr.* at 91–92. In contrast, E.I.B. could not have been joined as a separate party in the prior paternity action brought on her behalf under *N.J.S.A.* 9:16–3. *B. v. O., supra,* 50 *N.J.* at 97, 232 *A.*2d 401; *Kopak v. Polzer, supra,* 5 *N.J.Super.* at 117, 68 *A.*2d 484. Therefore, unlike in *Johnson* and *Ruddock,* the prior paternity action provided the full protection of E.I.B.'s interests contemplated by existing state law.

The only cases brought to our attention in which a subsequent paternity action on behalf of a child has been found not to be barred under principles of *res judicata* or collateral estoppel by a prior unsuccessful action actually litigated on the child's behalf in conformity with state law are *Ex Parte Snow,* 508 *So.*2d 266 (Ala.1987) and *Settle By and Through Sullivan v. Beasley,* 309 *N.C.* 616, 308 *S.E.*2d 288 (1983). However, these cases represent the minority view and in our opinion fail to accord sufficient weight to the interests of both a putative father and the courts in finality once there has been an adjudication of non-paternity in a proceeding in which the child's interests have been adequately represented. *See* Note, *Privity, Preclusion, and the Parent–Child Relationship,* 1977 *B.Y.U.L.Rev.* 612, 632 (a determination of non-paternity should provide an accused man with some assurance of finality, given that "unnecessary relitigation of the paternity issue is among the most harassing actions imaginable").

In sum, the paternity action brought on E.I.B.'s behalf by her mother pursuant to the former *N.J.S.A.* 9:16–2 and 3 made the same allegations, sought essentially the same relief and was

actually litigated through trial and an appeal. Therefore, we are satisfied that E.I.B.'s rights and interests received substantial protection in that action and that she is bound by the result under the doctrine of collateral estoppel.

Accordingly, we reverse the order denying defendant's motion to dismiss.